1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6449
E-mail: jpafiti@pomlaw.com

*Attorneys for Plaintiffs and the*
*Proposed Class*

*- additional counsel on signature page -*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

DONALD LITTLEFIED, JOEL SANTUCCI, DAVID
JOHNSON, JAMES SOKOL, and MIRIAM FELDMAN,
individually and on behalf of others similarly situated,

                    Plaintiffs,

          v.

APPLE INC.,

                    Defendant.

Case No: 5:18-cv-00182

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

Plaintiffs Donald Littlefield, Joel Santucci, David Johnson, James Sokol, and Miriam Feldman (collectively, "Plaintiffs"), individually and on behalf of the class of all those similarly situated as defined herein, by their undersigned counsel, complaining of the Defendant Apple Inc. ("Apple" or "Defendant"), allege the following based upon personal knowledge as to themselves and their own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through their attorneys.

NATURE OF THE ACTION

1.      Plaintiffs and the Class bring this action against Apple Inc. for its unfair and deceptive business practices, misleading statements and omissions, and false advertising in connection with its failure to inform owners of certain models of Apple's iPhone that installing operating system updates that Apple released and promoted to them would damage the performance of their phones.

2.      Plaintiffs bring this action on behalf of owners of all versions of the iPhone 6, 6 Plus, 6s, 6s Plus, SE, 7, and 7 Plus (the "Affected iPhones") who were harmed when the software on their devices was updated to all iOS operating systems released by Apple from iOS 10.2.1 (released on January 23, 2017) through iOS11.2.1 (released on December 13, 2017) (the "iOS 10 and iOS 11 Updates").  These updates caused Plaintiffs' devices to be significantly slower and interfered with the normal usage of their phones.

3.      Plaintiffs allege that Apple engaged in unfair and deceptive business practices and false advertising, and made misleading statements and omissions, when it represented that the iOS 10 and iOS 11 Updates were compatible with and support all versions of the Affected iPhones. Apple also failed to warn owners that the iOS 10 and iOS 11 Updates would interfere significantly with their phones' performance.  Apple even went so far as to tout the improved performance that would result from the iOS 10 and iOS 11 Updates when these updates would in fact harm the Affected iPhones.

4.      After making these representations, Apple *admitted* on December 20, 2017 that it deliberately engineered the iOS 10 and iOS 11 Updates to prevent processing chips in the Affected iPhones from performing at their full capacity, as they had done previously.  The iOS 10 and iOS 11 Updates thus did the opposite of what Apple represented.  Instead of enhancing the performance of the Affected iPhones, the iOS 10 and iOS 11 Updates were designed to limit the devices' performance.

5.      In addition to concealing the true effect of the iOS 10 and iOS 11 Updates, Apple failed to inform Plaintiffs that the performance of their Affected iPhones could be improved by replacing the battery at a much lower cost than replacing their phones with a newer model of the iPhone.

6.      To make matters worse, Plaintiffs were not able to undo the iOS 10 and iOS 11 Updates that harmed their phones because Apple made the updates irreversible without warning of their permanent nature.

7.      After updating their phones without knowledge of this concealed information, Plaintiffs have been faced with the unfortunate choice of either continuing to use a device that experiences significantly slower processing speeds and other problems that interfere with its ordinary use, or purchasing a new phone for at least hundreds of dollars.

<u>PARTIES</u>

8.      Plaintiff Donald Littlefield is a California resident who lives in Folsom, California.

9.      Plaintiff Joel Santucci is a New York resident who lives in Maspeth, New York.

10.     Plaintiff David Johnson is an Illinois resident who lives in Gurnee, Illinois.

11.     Plaintiff James Sokol is a Connecticut resident who lives in Seymour, Connecticut.

12.     Plaintiff Miriam Feldman is an Oregon resident who lives in Bend, Oregon.

13.     Defendant Apple Inc. is a California corporation with an address at 1 Infinite Loop Cupertino, CA 95014.

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

JURISDICTION AND VENUE

14.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because at least one member of the putative class is a citizen of a State other than that of the citizenship of Apple, there are more than 100 Class Members, and the damages suffered and sought to be recovered herein total, in the aggregate, in excess of $5,000,000, exclusive of interest and costs.

15.     This Court has personal jurisdiction over Defendant Apple, Inc. because Apple is incorporated under the laws of the State of California and its headquarters are located in Cupertino, California.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Apple resides in this district and because the actions described in this Complaint were conducted in and orchestrated from this district by Apple.

17.     In addition, facts and transactions related to Plaintiffs' claims occurred in this District.

SUBSTANTIVE ALLEGATIONS

**Apple Inserted a "Throttling" Mechanism into the iOS 10 and iOS 11 Updates**

18.     Apple knew that the Affected iPhones' functionality and/or performance was going to be negatively affected by the iOS 10 and iOS 11 Updates before the Company released the updates to the public.

19.     Moreover, Apple had exclusive knowledge of these ill effects of the iOS 10 and iOS 11 Updates, which Plaintiffs had no means of obtaining, until Apple admitted this information on December 20, 2017.

20.     Apple represented that the iOS 10 and iOS 11 Updates were available for all versions of the Affected iPhones.

21.     Customers have been complaining about the poor performance of the Affected iPhones for a long time.  Apple, however, did not reveal the cause of this problem until after a third party released

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

a report on the Internet on December 18, 2017 concluding that the iOS 10 and iOS 11 Updates caused the Affected iPhones to slow down.  This report, published by John Poole, founder of the software company Primate Labs, was based on Poole's analysis of approximately 100,000 iPhones.

22.     Poole explained that a phone's performance should remain constant even as its battery ages.  He determined that the unexpected lowered performance of the Affected iPhones was caused by the iOS 10 and iOS 11 Updates because "[t]he difference between [iOS versions] 10.2.0 and 10.2.1 is too abrupt to be just a function of battery condition."  According to this report, the most likely explanation for this occurrence was that "Apple introduced a change to limit performance when battery condition decreases past a certain point."  The problem appeared to be "widespread, and will only get worse as phones (and their batteries) continue to age."[1]

23.     On December 20, 2017, Apple addressed this report by admitting for the first time—to the *TechCrunch* website—that it deliberately engineered the iOS 10 and iOS 11 Updates to include a "throttling" mechanism that slows down older iPhone models.  Apple stated:

> Last year we released a feature for iPhone 6, iPhone 6s and iPhone SE to smooth out the instantaneous peaks only when needed to prevent the device from unexpectedly shutting down during these conditions. We've now extended that feature to iPhone 7 with iOS 11.2, and plan to add support for other products in the future.

24.     Apple claimed that it inserted the "throttling" mechanism into the iOS 10 and iOS 11 Updates because several factors cause lithium ion batteries (which Apple uses in iPhones, including the Affected iPhones) to degrade, "which can result in the device unexpectedly shutting down to protect its electronic components."  The most important factors that contribute to this battery erosion are unique to

---

[1] John Poole, "iPhone Performance and Battery Age," *Primate Labs* (December 18, 2017) (available at https://www.geekbench.com/blog/2017/12/iphone-performance-and-battery-age/) (last accessed January 7, 2018).

older phones, including the battery's age and, although Apple did not mention it in its December 20, 2017 statement, the number of recharging "cycles" the battery has endured.[2]

25.     Apple failed to warn consumers that the iOS 10 and iOS 11 Updates contained this detrimental "throttling" feature.  As *Wired* magazine has explained:

> Direct battery fixes certainly would have made the most sense. But even allowing that a software tweak was the only way Apple could have proceeded—untrue, but just for argument's sake—it had a much better option than making its software solution covert.
>
> ***Rather than quietly push out an update that crimped older iPhones, it should have made that throttling opt-in.*** As it stands, there's no way to avoid having your phone slowed down once the battery reaches its limits. ***By giving users the choice, and giving them the information necessary to make their own decision, Apple could avoid the frustrations many have expressed over the policy.***
>
> While making the throttling opt-in could cause performance issues for users who opt-out, it would give users a sense of control over the situation and avoid making them feel like they're being tricked into buying a new phone. ***As it stands, Apple's move comes off as deceptive.***[3]

26.     Apple's largest competitors in the smartphone industry, Samsung, Motorola, HTC and LG—who, together with Apple, manufacture nearly all of the smartphones used in the U.S.—have said that they do not "throttle their phones' processor speeds as their batteries age." As an industry publication has commented, "[t]aken together, the statements [by Apple's competitors] make it clear that Apple's battery management practices aren't standard industry behavior."[4]

---

[2] Paul Santos, "Apple: All You Wanted To Know On The iPhone Throttling Scandal," *Seeking Alpha* (December 26, 2017) (available at https://seekingalpha.com/article/4133931-apple-wanted-know-iphone-throttling-scandal) (last accessed January 7, 2018).

[3] Jordan McMahon, "Apple Had Way Better Options Than Slowing Down Your Phone," *Wired* (December 21, 2017) (available at https://www.wired.com/story/apple-iphone-battery-slow-down/) (last accessed January 7, 2018).

[4] Jacob Kastrenakes, "Samsung and LG say they don't slow phones with older batteries like Apple," *The Verge* (Dec. 29, 2017) (available at https://www.theverge.com/circuitbreaker/2017/12/29/16829512/samsung-lg-dont-slow-phones-older-batteries-apple) (last accessed January 7, 2018); Jacob Kastrenakes, "HTC and Motorola say they don't slow old phones like Apple does," *The Verge* (Dec. 28, 2017) (available at https://www.theverge.com/circuitbreaker/2017/12/28/16825288/htc-motorola-dont-slow-processor-speeds-old-batteries-apple) (last accessed January 7, 2018).

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

27.     Furthermore, Apple did not "deliver the best experience for customers, which includes overall performance and prolonging the life of their devices," as it stated its goal was when disclosing the throttling feature on December 20, 2017.  The iOS 10 and iOS 11 Updates in fact decreased performance and did not reverse the degradation in battery life that occurred over time and with increased recharging cycles.

28.     Indeed, Plaintiffs have experienced reduced battery life since installing the iOS 10 and iOS 11 Updates.

29.     Apple did not even solve the battery problems that it claimed to be trying to address. According to Apple, 20 percent of iPhone 6s and 30 percent of iPhone 6 devices that previously experienced unexpected shut down issues continued to experience those issues after having iOS 10.2.1 installed.[5]

30.     In addition, by concealing that slowness and other performance difficulties were caused by a feature in the iOS 10 and iOS 11 Updates that prevented the phone's processors from operating at their full capacity even when the phone was not in low-power mode, Apple deceived customers into thinking that the problem was with the quality or speed of their phone's processing chips, rather than with the phone's battery.  This led customers to purchase new phones when replacing their current phones' batteries at a much lower cost would have solved much of the performance difficulties.

31.     In particular, Apple advertises that an iPhone 8 costs $699 to $849, an iPhone 8 Plus costs

---

[5] Matthew Panzarino, "Apple says IOS 10.2.1 has reduced unexpected iPhone 6s shutdown issues by 80%," *TechCrunch* (February 23, 2017) (available at https://techcrunch.com/2017/02/23/apple-says-ios-10-2-1-has-reduced-unexpected-iphone-6s-shutdown-issues-by-80/) (last accessed January 7, 2018).

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

$799 to $949, and an iPhone X costs $999 to $1,149, depending on the phone's memory capacity.[6]

32.     When owners of the Affected iPhones are faced with the dilemma of continuing to use a slow, buggy phone or spend at least hundreds to buy a new phone, Apple usually benefits because consumers will typically buy a new iPhone, rather than another phone brand.  If these customers buy any another type of smartphone, they lose the use of all the Apple and third-party applications ("Apps") that they purchased and must buy other Apps on the competitor smartphone, incurring a double loss (loss of Apps and payment for new Apps). A large number of owners of Affected iPhones therefore purchase newer versions of the iPhone to keep their investment in the App ecosystem, enriching Apple in the process.

33.     iPhone owners will also buy a newer iPhone when faced with the choice because the phone is familiar and they can easily transfer their information, media, contacts, and apps without a major disruption in usage. There is no learning curve and no delays and trouble that accompany new information input.

34.     Apple thus received a large financial benefit by having owners of the Affected iPhones purchase new, expensive devices rather than simply replacing their batteries.  Even taking Apple at its word that it inserted the throttling feature into the iOS 10 and iOS 11 Updates to prevent sudden shutdowns, Apple chose not to disclose the effect of this feature because it sought to conceal the fact that its batteries were degrading far too soon, and much earlier than consumers expected based on Apple's representations.  This concealment caused owners of the Affected iPhones to purchase new phones rather than take the much less expensive step of replacing the batteries of their old phones.

---

[6] https://www.apple.com/shop/buy-iphone/iphone-8#00,20,3; https://www.apple.com/shop/buy-iphone/iphone-8#01,20,32; https://www.apple.com/shop/buy-iphone/iphone-x#00,20,31 (all last accessed January 7, 2018).

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

35.     As one report has explained, Apple's action "speaks to a really enormous problem with the iPhone: this $700 to $1,000-plus product, as designed, isn't able to function near its peak after just a year of use. That should be unacceptable. . . .   Until now, it had seemed that once your phone got this way — say, a year or two after launch — the only solution was to get rid of it and buy a new one. It had seemed that, by their nature, phones just started to give out after a year or two of use and needed to be replaced. ***This has led to a lot of people replacing their phones every two years or so. But the reality may be, in part at least, that it's a much simpler problem: a bad battery.*** Something that can be swapped out for $79."[7]

36.     Similarly, Poole (whose investigation led to Apple's December 20, 2017 admission) explained that although Apple's throttling strategy "is created to mask a deficiency in battery power, users may believe that the slow down is due to CPU performance, instead of battery performance, which is triggering an Apple introduced CPU slow' not, 'my phone is slow so I should replace its battery.'"[8]

37.     According to Apple's own explanation of its actions, it "***is knowingly designing and selling products that begin to fall apart after a year . . . .   This isn't something buyers are warned about, and they aren't presented with options to fix it.*** It's always just been assumed that you have to buy a new phone, which is a big expense."[9]

38.     The *Wall Street Journal* noted that Apple was roundly criticized "for not disclosing the [throttling] practice sooner, and the incident has caused some users to question the quality of Apple's devices and the motivation behind Apple's choice to curb performance."  According to an industry expert,

---

[7] Jacob Kastrenakes, "iPhones start slowing down after a year of use, and that's way too soon," *The Verge* (December 20, 2017) (available at https://www.theverge.com/circuitbreaker/2017/12/20/16803190/iphone-slowdown-is-needed-but-also-a-problem) (last accessed January 7, 2018).

[8] Poole, "iPhone Performance and Batter Age."

[9] Kastrenakes, "iPhones start slowing down after a year."

"Apple's major miscalculation . . . was in not being up front about" the throttling feature earlier.  Apple could simply have disclosed at the outset that its "phones were slowing down because of a power management feature."  But Apple instead chose its deceptive course of conduct that hid from consumers the true cause of the problems they were experiencing with their Affected iPhones.[10]

39.    Furthermore, Apple exacerbated its deception as to the true source of the Affected iPhones' difficulties by informing consumers that a message would appear on the screen inside the phone's Settings section if Apple determined that the phone's "battery may need to be serviced."  Consumers using any of the iOS 10 and iOS 11 Updates could see this notice by going to the "Battery" tab in the "Settings" section of their phones.[11]

40.    This feature was thought to add more transparency to people wondering when Apple considers the battery worn down enough to get swapped out.  But Apple did not provide this notice to consumers when the performance of their phones was being harmed by the throttling mechanism contained in the iOS 10 and iOS 11 Updates that went into effect because of the poor quality of their batteries.  Apple therefore gave consumers the false assurance that the problems they were experiencing with their phones as a result of the iOS 10 and iOS 11 Updates were not a result of poor battery performance.

41.    Furthermore, Apple affirmatively discouraged customers from replacing their batteries and did not advertise its battery replacement policy.[12]

---

[10] Robert McMillan, "Apple Apologizes for Handing of iPhone Battery Issue," *The Wall Street Journal* (Dec. 28, 2017) (available at https://www.wsj.com/articles/apple-apologizes-for-handling-of-iphone-battery-issue-1514499473) (last accessed January 7, 2018).

[11] Apple Support, "If you see 'Your iPhone batter may need to be serviced'" (available at https://support.apple.com/en-us/HT207453)  (last accessed January 7, 2018).

[12] McMahon, "Apple Had Way Better Options."

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

42.     Apple's failure to inform Plaintiffs and other Class Members of the true source of the problems they were experiencing with their Affected iPhones thus denied consumers the opportunity to make an informed decision regarding whether to upgrade their phones or just replace the battery at a much lower cost.

**Plaintiffs' Damaged iPhones**

43.     Plaintiffs all installed the iOS 10 and iOS 11 Updates onto their Affected iPhones.

44.     After installing the iOS 10 and iOS 11 Updates, Plaintiffs' phones slowed down significantly, with delayed responses to user commands and the launching of Apps.  In addition, the performance of the batteries in Plaintiffs' Affected iPhones deteriorated since the time that they purchased their phones to the point at which their batteries lasted for a far shorter time—and their phones required recharging on a much more frequent basis—than they did in the past.

45.     Plaintiffs also experienced many other problems with the performance of their updated phones.  Overall, after the iOS 10 and iOS 11 Updates, Plaintiffs' devices were no longer functional for normal use, exhibiting instead slow and buggy responses during ordinary use.  The iOS 10 and iOS 11 Updates caused performance problems in all aspects of their phones' functionality, including core functions like the phone, email, text messages, internet, and use of Apps, among other core functionalities.

46.     The other Class Members experienced similar functionality issues with their Affected iPhones after downloading the iOS 10 and iOS 11 Updates.

47.     Plaintiffs and the other Class Members could not undo the detrimental iOS 10 and iOS 11 Updates because Apple does not allow customers to remove these updates and revert to previous, better functioning versions of iOS.  But the Company does not warn customers that the iOS 10 and iOS 11 Updates are irreversible.

48.     Furthermore, Plaintiffs and the other Class Members had no choice but to update their devices with the iOS 10 and iOS 11 Updates.  Apple constantly reminded them through pop-up messages

that repeatedly appeared on their devices' home screens that their software needed to be updated and that an update was available for download. These reminders were constant and disruptive, including because they remained on the screens of the Affected iPhones until the user took the affirmative step of responding to the message. Moreover, these pop-up reminders continued until the user updated his or her phone's software as directed by Apple.

49.     In addition, these reminders prominently displayed an option for consumers to install the update in the near future, such as overnight, and made it difficult for the consumer to find the option to simply dismiss the reminder. Consumers were therefore easily tricked into installing the iOS 10 and iOS 11 updates even if they did not intend to do so.

50.     Plaintiffs and the other Class Members also could not decline the iOS 10 and iOS 11 Updates indefinitely because the Apps on their phones would become outdated and obsolete. These Apps could not be updated unless the iPhone was running the latest iOS software.

51.     Furthermore, Plaintiffs were compelled to install the iOS 10 and iOS 11 Updates because, as described further below, Apple represented that the iOS 10 and iOS 11 Updates contained security patches that were necessary to protect the security of their phones.

52.     Plaintiffs and the other Class Members were therefore forced to either use a buggy and slow updated iPhone, or pay at least hundreds of dollars for a new phone.

53.     In addition, regardless of whether Plaintiffs were forced to install the iOS 10 and iOS 11 Updates, they were misled by Apple's deceptive and misleading statements, described further below.

**Apple's Deceptive and Misleading Statements Related to the iOS 10 and iOS 11 Updates**

54.     Apple deliberately inserted the throttling feature into the iOS 10 and iOS 11 Updates to hide difficulties associated with aging batteries in the Affected iPhones. But Apple not only failed to disclose that information; it affirmatively represented that the iOS 10 and iOS 11 Updates would improve the functionality, performance, and/or security, among other features, of the Affected iPhones.

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

55.    Apple has expressly represented that the purpose of the iOS 10 and iOS 11 Updates were to "deliver the best experience for customers, which includes overall performance and prolonging the life of their devices." In addition, when advertising security updates on its website, the Company emphasizes the necessity of the updates because "[k]eeping your software up to date is one of the most important things you can do to maintain your Apple product's security."[13] What Apple failed to disclose, however, was that its fix involved "throttling" the Affected iPhones by slowing them down and detracting from their overall performance.

56.    Apple promised in the following notification, when it released iOS 10.2.1 (the first of the iOS 10 and iOS 11 Updates) on January 23, 2017, that this update "includes bug fixes and improves the security of your iPhone or iPad":



iOS 10.2.1
Apple Inc.
72.1 MB

iOS 10.2.1 includes bug fixes and improves the security of your iPhone or iPad.

For information on the security content of Apple software updates, please visit this website:
https://support.apple.com/en-gb/HT201222

57.    Apple made similar representations in all of the subsequent iOS 10 and iOS 11 Updates. The pop-up advertising messages that constantly appeared on customers' phones touted the improvements that the new operating system would bring while failing to disclose that they included the "throttling" feature that would slow down customers' phones.[14] For example:

---

[13] Apple security updates, available at https://support.apple.com/en-us/HT201222 (last accessed January 7, 2018).

[14] *See* "Download iOS 10.0 - iOS 10.3.3 Information" (available at https://support.apple.com/kb/DL1893?locale=en_US); "About iOS 11 Updates" (available at https://support.apple.com/en-us/HT208067) (both last accessed January 7, 2018).

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

a. The iOS 10.3 (released on March 27, 2017) and 10.3.1 (released on April 3, 2017) updates promised new functionality: "iOS 10.3 introduces new features including the ability to locate AirPods using Find my iPhone and more ways to use Siri with payment, ride booking and automaker [caremaker] apps."

b. The iOS 10.3.2 (released on May 15, 207) and 10.3.3 updates (released on July 19, 2017) promised enhancements to security: "iOS 10.3.2 includes bug fixes and improves the securities of your iPhone or iPad."

c. The iOS 11.0.1 (released on September 26, 2017) update promised functional improvements to the iPhone: "iOS 11.0.1 includes bug fixes and improvements for your iPhone or iPad."

d. The iOS 11.0.2 (released on October 3, 2017) update promised additional features and improvements: "iOS 11.0.2 brings hundreds of new features to iPhone and iPad including an all new App Store, a more proactive and intelligent Siri, improvements to Camera and Photos, and augmented reality technologies to enable immersive experiences."

e. The iOS 11.0.3 (released on October 11, 2017) promised to fix certain problems on iPhone 6 and iPhone 7 devices, noting that the update fixes "an issue where audio and haptic feedback would not work on some iPhone 7 and 7 Plus devices" and "addresses an issue where touch input was unresponsive on some iPhone 6s displays."

f. The iOS 11.1 (released on October 31, 2017) promised both "bug fixes and improvements."

g. The iOS 11.1.1 (released on November 9, 2017) update promised to address certain bugs, including "fixes an issue with keyboard auto-correct" and fixes an issue where Hey Siri stops working.

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

13

h. The iOS 11.1.2 (released on November 16, 2017) update promised to address certain issues affecting phones, such as "an issue where the iPhone X screen becomes temporarily unresponsive to touch" and "an issue that could cause distortion in Live Photos."

i. The iOS 11.2.1 (released on December 13, 2017) update promised enhancements, such as "fix[ing] bugs including an issue that could disable remote access to shared users of the Home app."

58. In addition to the affirmative statements that Apple made to describe the iOS 10 and iOS 11 Updates, Apple's very act of offering the iOS 10 and iOS 11 Updates, as well as its repeatedly encouraging consumers to install these updates through constant pop-up advertisements, communicated to consumers that these updates were compatible with, and would not harm, their Affected iPhones. These representations were deceptive and misleading because, in reality, the iOS 10 and iOS 11 Updates contained the throttling feature that slowed down the Affected iPhones and otherwise caused them to perform poorly.

59. The fact that Apple offered and allowed the iOS 10 and iOS 11 Updates to be downloaded onto only certain iPhone models, and not models earlier than the Affected iPhones, further indicated that these updates were compatible with, and would not harm, the iPhone models for which they were available.

60. All of Apple's messages, pop-up reminders, notifications, and other representations to consumers related to the iOS 10 and iOS 11 Updates discussed above constitute advertisements for these updates.

61. Apple also made deceptive and misleading representations in many other advertisements directed at Plaintiffs and the other Class Members. For example, Apple represents on its website that "iOS 11 sets a new standard for what is already the world's most advanced mobile operating system. It makes iPhone better than before. . . . With iOS 11, iPhone and iPad are the most powerful, personal, and

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

14

intelligent devices they've ever been."[15]  Apple misleadingly described iOS 11 as an unabashedly positive update while failing to disclose its deleterious throttling feature.

62.    Apple failed in all of the representations described above to disclose that 1) the iOS 10 and iOS 11 Updates would install the throttling mechanism that would slow down and otherwise harm their phones' performance and 2) that this harm could be alleviated by replacing the phone's battery rather than purchasing a new phone.  These failures constituted unfair and deceptive business practices and false advertising, and involved misleading statements that omitted information that Apple had a duty to disclose.

**Plaintiffs Were Harmed by Apple's Tactics**

63.    As a result of Apple's above-mentioned deceptive practices, false advertising, and misleading statements and omissions, Plaintiffs and the rest of the Class were harmed and suffered economic loss by losing functional or normal use of their Affected iPhones and/or being forced to purchase a new smartphone as the only alternative to living with a slow, buggy, and disruptive device.

64.    Apple's statements and advertisements were materially misleading because while it encouraged installing the iOS 10 and iOS 11 Updates and made positive representations about them, Apple failed to warn owners of the ill effects of these updates.

65.    Apple had a duty to warn consumers about the effect of the iOS 10 and iOS 11 Updates or the performance of the Affected iPhones.

66.    Plaintiffs and the other Class Members saw Apple's misleading statements in advertisements on the screens of their phones, including in Apple's pop-up boxes, notifications, and messages describing the iOS 10 and iOS 11 Updates and encouraging Plaintiffs and the other Class Members to install these updates.

---

[15] Available at https://www.apple.com/ios/ios-11/ (last accessed January 7, 2018)

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

67.     In addition, it is impossible for consumers—including Plaintiffs and the rest of the class—to miss Apple's widespread, ubiquitous advertising net.  The advertisements appear in every state in the country, through seemingly every medium possible, including billboards, magazines, and the Internet. The advertisements and statements included in this Complaint are only samples of Apple's advertisements and representations concerning the iOS 10 and iOS 11 Updates.

68.     Plaintiffs and the other Class Members were all subjected to the same false, misleading and deceptive practices and advertising as Apple designed and promoted the iOS 10 and iOS 11 Updates for the iPhone to be marketed and distributed in a uniform fashion to be adopted by owners of the Affected iPhones in every state in the country.

69.     Plaintiffs and the other Class Members relied on Apple's misleading statements and/or advertisements (including omissions) when installing the iOS 10 and iOS 11 Updates with the fair and reasonable expectation of receiving equal or better performance and/or new features and functionality as compared to the level that the Affected iPhones provided prior to these updates.

70.     Plaintiffs and the other Class Members would not have installed the iOS 10 and iOS 11 Updates if they knew that they contained the throttling feature that Apple secretly inserted into them and/or they would have bought a new battery instead of buying a newer iPhone model after having installed the iOS 10 and iOS 11 Updates.

71.     At all relevant times, Apple knew its statements and advertisements were materially misleading.  Their statements and advertisements were false due to negligent, reckless, and/or intentional conduct.

72.     Apple had exclusive knowledge of the ill effects of the iOS 10 and iOS 11 Updates, which Plaintiffs had no means of obtaining, until Apple admitted these effects on December 20, 2017.

73.     Plaintiffs and the other Class Members suffered the same or similar harm as a direct result of Apple's material misrepresentations and concealment of true material facts, leading them to download

1
2
3

and install a product that was hailed as offering a substantial upgrade, faster performance, enhanced reliability, enhanced features, and greater functionality and capability, when, in fact, that was not the case.

4

## CLASS ACTION ALLEGATIONS

5
6
7
8

74.     This action is brought on behalf of the named Plaintiffs and as a Class Action pursuant to Rules 23(b)(1),(2), and (3) of the Federal Rules of Civil Procedure on behalf of the following proposed classes or class members:

9
10

> All individuals in the United States who own or have owned an iPhone 6, 6 Plus, 6s, 6s Plus, SE, 7, or 7 Plus and downloaded the iOS 10 and iOS 11 Updates (the "**Nationwide Class**").

11
12
13
14
15

75.     In the alternative to the claims asserted on behalf of the Nationwide Class, this action is brought on behalf of the named Plaintiffs and as a Class Action pursuant to Rules 23(b)(1),(2), and (3) of the Federal Rules of Civil Procedure on behalf of the following proposed classes (the "Subclasses," and, together with the Nationwide Class, the "Class" or "Class Members") from each Plaintiff's home state:

16
17

> All individuals in California who own or have owned an iPhone 6, 6 Plus, 6s, 6s Plus, SE, 7, or 7 Plus and downloaded the iOS 10 and iOS 11 Updates (the "**California Subclass**").

18
19
20

> All individuals in New York who own or have owned an iPhone 6, 6 Plus, 6s, 6s Plus, SE, 7, or 7 Plus and downloaded the iOS 10 and iOS 11 Updates (the "**New York Subclass**").

21
22

> All individuals in Illinois who own or have owned an iPhone 6, 6 Plus, 6s, 6s Plus, SE, 7, or 7 Plus and downloaded the iOS 10 and iOS 11 Updates (the "**Illinois Subclass**").

23
24

> All individuals in Connecticut who own or have owned an iPhone 6, 6 Plus, 6s, 6s Plus, SE, 7, or 7 Plus and downloaded the iOS 10 and iOS 11 Updates (the "**Connecticut Subclass**").

25
26

> All individuals in Oregon who own or have owned an iPhone 6, 6 Plus, 6s, 6s Plus, SE, 7, or 7 Plus and downloaded the iOS 10 and iOS 11 Updates (the "**Oregon Subclass**").

27
28

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

76.     Excluded from the Class are Apple, its officers and directors, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Apple has or had a controlling interest.

77.     <u>Numerosity:</u> The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable. While the exact number and identities of Class Members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes and avers that there are at least thousands of Class Members.

78.     <u>Commonality:</u> Plaintiffs' and Class Members' claims derive from a common core of salient facts and share many of the same legal claims. There are questions of fact or law common to members of the Class which predominate over any questions affecting any individual members, including, but not limited to, the following:

a.  Whether, and how, the iOS 10 and iOS 11 Updates slowed down and otherwise negatively affected the performance of the Affected iPhones;

b.  Whether Apple purposefully or knowingly designed the iOS 10 and iOS 11 Updates to slow down and otherwise negatively affect the performance of the Affected iPhones;

a.  Whether Apple failed to disclose the negative effects of the iOS 10 and iOS 11 Updates on the performance of the Affected iPhones;

b.  Whether Apple failed to disclose that the negative effects of the iOS 10 and iOS 11 Updates could be remedied significantly by replacing the battery of the Affected iPhones; and

c.  Whether, and where, Apple made false and misleading statements about the iOS 10 and iOS 11 Updates.

79.     <u>Typicality:</u> Plaintiffs' claims are typical of the claims of other Class Members in that Plaintiffs' claims arise from the same course of deceptive conduct by Apple that affects Class Members.

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

18

Plaintiffs, like other Class Members, were harmed by Apple's statements, advertisements, and the degraded functionality of their phones. Plaintiffs, like other Class Members, were harmed by Apple's false and misleading statements, as well as its failure to warn owners of the Affected iPhones that 1) the iOS 10 and iOS 11 Updates would significantly and negatively affect the functionality and performance of their Affected iPhones and 2) those harms could be alleviated by replacing the batteries of the Affected iPhones rather than by purchasing new phones.

80.     Adequacy: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' claims are coextensive with, and not antagonistic to, the claims of other Class Members. Plaintiffs are willing and able to vigorously prosecute this action on behalf of the Class. Plaintiffs' attorneys are competent and experienced in the area of representative and class actions.

81.     Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class Members may be relatively small, the expense and burden of individual litigation make it impossible for Class Members to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a class action.

82.     Plaintiffs bring this action under Rule 23(b)(3) because common questions of law and fact predominate over issues that are individual to Class Members. The proposed Class is sufficiently cohesive to warrant class and representative treatment. Apple has the technology and records that would permit Plaintiffs a plausible class-wide method for proving the case.

83.     Certification under Rule 23(b)(3) is also appropriate because a class action is superior to other available methods for the fair and efficient adjudication of this action. The expense of litigating each Class Member's claim individually would be so cost prohibitive as to deny Class Members a viable remedy. Plaintiffs envision no unusual difficulty in the management of this action as a class action.

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

84.     Plaintiffs also bring this action under Rule 23(b)(2) because Apple has acted or refused to act on grounds generally applicable to all Class Members, thereby making final injunctive relief concerning the Class as a whole appropriate. In the absence of appropriate injunctive relief, Defendant will continue its unfair and deceptive practices. Defendant's uniform conduct towards Plaintiffs and the Class Members makes certification under Rule 23(b)(2) appropriate.

## COUNT I

**(Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, on behalf of the Nationwide Class, and in the alternative, the California Subclass)**

85.     Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if fully alleged herein.

86.     Defendant's acts and practices, as alleged in this Complaint, constitute unfair, unlawful and/or fraudulent business practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.

87.     Defendant has engaged, and continues to engage, in unfair business practices by 1) including code in the iOS 10 and iOS 11 Updates designed to materially slow down the speed, and otherwise detract from the overall performance, of the Affected iPhones (without disclosing this to consumers before download) and 2) purposefully failing to disclose that performance could be significantly restored by simply changing the phone's battery.

88.     Defendant's business practices are unscrupulous, unethical, and substantially injurious to consumers. There is no legitimate business reason for Apple's business practices such that the utility of its business practice outweighs the harm to consumers.  Furthermore, Apple's business practices undermine this State's fundamental policy against unfair business practices that are likely to deceive or mislead consumers, and which undercut trust and fair competition in the consumer marketplace.

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

89.     Plaintiffs have suffered injury in fact and lost money or property as a result of such practices in the form of the purchase price, replacement cost, or reduced value of their Affected iPhones.

90.     Defendant's unfair business practices were material to reasonable consumers, who did not expect that the speed and performance of their Affected iPhones would be harmed by the iOS 10 and iOS 11 Updates and did not know that those harms could be alleviated by replacing the batteries of their Affected iPhones.

91.     Plaintiffs and the other members of the Class purchased their Affected iPhones and downloaded the iOS 10 and iOS 11 Updates, unknowingly causing their phones to be throttled.  Apple did not inform Plaintiffs that its software was the cause of their phones' diminished performance, and did not inform them that a simple change of battery could restore performance.

92.     Plaintiffs and the other members of the Class have also suffered reduced productivity as a result of Apple's practices.

93.     At least thousands of consumers bought newer model iPhones because of Apple's misconduct and deceptive practices.

94.     On behalf of the proposed Nationwide Class and, alternatively, the California Subclass, Plaintiffs hereby seek restitution in an amount to be determined at trial.

95.     On behalf of the proposed Nationwide Class and, alternatively, the California Subclass, Plaintiffs also hereby seek entry of appropriate equitable relief pursuant to California Business & Professions Code § 17203, including an injunction prohibiting Apple from engaging in the same or similar unfair business practices in the future, civil penalties, and restitution of money that may have been acquired by Defendants' unfair business practices. The entry of injunctive relief, as described below, is of particular importance, and necessary to secure a fair consumer marketplace.

**COUNT II**

**(Violation of California's False Advertising Laws, Cal. Bus. & Prof. Code § 17500,** *et seq.***, on behalf of the Nationwide Class, and in the alternative, the California Subclass)**

96.     Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if fully alleged herein.

97.     Apple's representations, including statements made in its television, radio, and print advertising, websites, brochures, and all other written and oral materials disseminated by Apple to promote its products constitute advertising for purposes of California's False Advertising Laws, Cal. Bus. & Prof. Code § 17500, *et seq.*

98.     Such advertising contained statements that were false, misleading, and/or omitted material information that Apple was under a duty to disclose and that was known or should have been known to Apple to be false, misleading, or deceptive.

99.     As a direct and proximate result of Apple's misconduct and omissions, Plaintiffs and the other members of the Class sustained damages in an amount to be determined at trial.

100.     In addition, the misleading advertising described herein presents a continuing threat to Plaintiffs and members of the public in that Apple persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so through injunctive relief ordered by this Court, as described below.

**COUNT III**

**(Trespass to Chattels on behalf of the Nationwide Class and, in the alternative, the Subclasses)**

101.     Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if fully alleged herein.

102.     Plaintiffs bring this count under California law for the Nationwide Class, or, alternatively, under the laws of all states, as there is no material difference in the law of fraudulent concealment as applied to the claims and questions in this case.

103.     The law of trespass to chattels prohibits the intentional intermeddling with personal property in the possession of another, without consent, that results in either a) the deprivation of the use of the personal property or b) the impairment of the condition, quality, or usefulness of the property.

104.     Apple impaired the condition, quality and usefulness of the Plaintiffs' and Class Members' Affected iPhones without their knowledge or consent. Such acts constituted an intentional interference with the use and enjoyment of their devices.

105.     Apple acted intentionally because it released the iOS 10 and iOS 11 Updates knowing that they contained the throttling feature and that Plaintiffs and the other members of the Class would download that software to their Affected iPhones, thereby reducing the speed and performance of their devices.  Apple also intentionally failed to disclose that these harms could be alleviated by replacing the batteries of the Affected iPhones.

106.     Plaintiffs and the other Class Members consented to the installation of the iOS 10 and iOS 11 Updates only because Apple represented that these updates would improve, rather than harm, the performance of their phones, and because they were forced to install these updates for the reasons described above.

107.     Apple engaged in deception to gain access to the Affected iPhones and install the iOS 10 and iOS 11 Updates.

108.     Plaintiffs and the other members of the Class thus suffered actual damages as a result of Apple's actions in an amount to be determined at trial.

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

## COUNT IV

**(Fraudulent Concealment on behalf of the Nationwide Class,
and in the alternative, the Subclasses)**

109.     Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if fully alleged herein.

110.     Plaintiffs bring this count under California law, or, alternatively, under the laws of all states, as there is no material difference in the law of fraudulent concealment as applied to the claims and questions in this case.

111.     Apple intentionally failed to disclose to Plaintiffs and the other members of the Class that 1) Apple was purposefully slowing down and otherwise diminishing the performance of the Affected iPhones through the iOS 10 and iOS 11 Updates and 2) that these performance problems could be remedied by purchasing a new battery (collectively, the "Concealed Facts").

112.     Apple had exclusive knowledge of the Concealed Facts.

113.     Apple intended to deceive Plaintiffs and the other members of the Class by failing to disclose Concealed Facts.

114.     Plaintiffs and the other members of the Class did not know and could not have discovered the Concealed Facts.

115.     Apple made misrepresentations of material fact and failed to disclose the Concealed Facts intentionally and/or recklessly, with the intention that Plaintiffs and the other members of the Class would rely on its misrepresentations.

116.     If Apple had disclosed the Concealed Facts, Plaintiffs and the other members of the Class would not have installed the iOS 10 and iOS 11 Updates and/or they would have bought a new battery instead of buying a newer iPhone model after having installed the iOS 10 and iOS 11 Updates.

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

117.    The Concealed Facts were material to reasonable consumers, who did not expect that the speed and performance of their Affected iPhones would be harmed by the iOS 10 and iOS 11 Updates.

118.    Apple had a duty to disclose the Concealed Facts because, among other reasons, 1) Apple had exclusive knowledge of the Concealed Facts; 2) Apple knew that Plaintiffs and the other members of the Class were not reasonably likely to discover these facts; 3) Apple actively concealed these facts from Plaintiffs and the other members of the Class by making false representations concerning the iOS 10 and iOS 11 Updates and/or 4) Apple's relationship with Plaintiffs and the other members of the Class gave rise to a duty to disclose the Concealed Facts.

119.    Plaintiffs and the other members of the Class suffered damages as a direct and proximate result of Apple's failure to disclose of the Concealed Facts.

## COUNT V

### (Breach of Covenant of Good Faith and Fair Dealing on behalf of the Nationwide Class, and in the alternative, the Subclasses)

120.    Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if fully alleged herein.

121.    Plaintiffs brings this count under California law, or, alternatively, under the laws of all states, as there is no material difference in the law of fraudulent concealment as applied to the claims and questions in this case.

122.    In every contract or agreement there is an implied promise of good faith and fair dealing under California law.

123.    In dealings between Apple and its customers, Apple has power affecting its customers' rights.

124.    Apple entered into or continued a pre-existing contract with Plaintiffs at the time of each download of the iOS 10 and iOS 11 Updates.

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

125.    Apple contractually promised in the iOS 10 and iOS 11 Updates that these updates would improve, rather than diminish, the performance of the Affected iPhones.

126.    Despite its contractual promises, Apple instead purposefully took actions to reduce the performance level of the Affected iPhones, and purposefully failed to notify customers that replacing the battery would restore performance that had been throttled by the iOS 10 and iOS 11 Updates.

127.    Plaintiffs and the other members of the Class did all, or substantially all, of the things that their contracts with Apple required them to do.

128.    Apple's actions were objectively unreasonable given Apple's promises.

129.    Apple's conduct evaded the spirit of the bargain made between Apple on the one hand and Plaintiffs and the other members of the Class on the other hand.

130.    As a result of Apple's misconduct and breach of its duty of good faith and fair dealing, Plaintiffs and the other members of the Class suffered damages.  Plaintiffs and the other members of the Class did not receive the benefit of the bargain for which they contracted and for which they paid valuable consideration.

## <u>COUNT VI</u>

**(Violation of New York General Business Law § 349 on behalf of the New York Subclass)**

131.    Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if fully alleged herein.

132.    Apple's conduct was consumer oriented because, as described above, Apple falsely advertised, made materially misleading and deceptive statements, and negligently, recklessly or knowingly omitted or failed to disclose material information to consumers throughout New York regarding the performance of its products and software.

133.    Apple made material misstatements and omissions about the true nature of the iOS 10 and iOS 11 Updates in its advertisements for these updates and for the Affected iPhones.

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

134.    In particular, Apple made affirmative misstatements and omissions concerning the positive effects of the iOS 10 and iOS 11 Updates without disclosing to or warning Plaintiff Santucci and the New York Subclass of the negative effects of the iOS 10 and iOS 11 Updates, including that 1) Apple was purposefully slowing down and otherwise diminishing the performance of the Affected iPhones through the iOS 10 and iOS 11 Updates and 2) that these performance problems could be significantly remedied by purchasing a new battery.

135.    By reason of the foregoing, and as a result of Apple's conduct, Plaintiff Santucci and the New York Subclass have been harmed economically and by losing use of a functional iPhone.  Plaintiff Santucci and the New York Subclass are entitled to damages and attorneys' fees pursuant to New York General Business Law § 349.

## COUNT VII

### (Violation of New York General Business Law § 350 on behalf of the New York Subclass)

136.    Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if fully alleged herein.

137.    Apple's advertisements were materially false and misleading.  Apple made affirmative misstatements and omissions concerning the positive effects of the iOS 10 and iOS 11 Updates without disclosing to or warning Plaintiff Santucci and the New York Subclass of the negative effects of the iOS 10 and iOS 11 Updates, including that 1) Apple was purposefully slowing down and otherwise diminishing the performance of the Affected iPhones through the iOS 10 and iOS 11 Updates and 2) that these performance problems could be significantly remedied by purchasing a new battery.

138.    By reason of the foregoing and as a result of Apple's conduct, Plaintiff Santucci and the New York Subclass are entitled to recover damages pursuant to New York General Business Law § 350.

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

## COUNT VIII

**(Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act,
815 Ill. Comp. Stat. 505, *et seq.*, on behalf of the Illinois Subclass)**

139.    Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if fully alleged herein.

140.    The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505, *et seq.*, prohibits unfair methods of competition and unfair or deceptive acts or practices.

141.    Plaintiff David Johnson is a "person" and a "consumer" as defined in ICFA, 815 ILCS 505/(c) and (e), respectively.

142.    Apple was and is engaged in commerce in the State of Illinois in connection with Plaintiff Johnson and the other members of the Illinois Subclass.

143.    Apple's conduct described above that purposefully harmed the Affected iPhones was unfair and deceptive.

144.    Apple unilaterally took these harmful actions without warning or notice to Plaintiff Johnson and the other members of the Illinois Subclass.

145.    Apple made misleading and deceptive representations and advertisements to consumers such as Plaintiff Johnson and the other members of the Illinois Subclass concerning the true nature of the iOS 10 and iOS 11 Updates.

146.    Apple also omitted the true nature of its actions when providing the iOS 10 and iOS 11 Updates.

147.    Apple's omissions were material and deceptive because reasonable consumers did not expect that the speed and performance of their Affected iPhones would be harmed by the iOS 10 and iOS 11 Updates.  They would not have installed the iOS 10 and iOS 11 Updates if they knew that information

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

28

1
2
and/or they would have bought a new battery instead of buying a newer iPhone model after having installed the iOS 10 and iOS 11 Updates.

3
4
148.    Apple's conduct was also unfair, immoral, unethical, oppressive, and unscrupulous, and substantially injured Plaintiff Johnson and the other members of the Illinois Subclass.

5
6
7
8
9
10
149.    Plaintiff Johnson and the other members of the Illinois Subclass suffered damage as a result of Apple's deceptive and unfair conduct. Their phones' processing speed and overall performance have been significantly reduced.  Plaintiff Johnson and the other members of the Illinois Subclass have been deprived of the benefit of their bargain and are left with substandard iPhones that perform worse than they should.

11
12
13
**COUNT IX**

**(Violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. Ann. § 42-110, *et seq.*, on behalf of the Connecticut Subclass)**

14
15
16
150.    Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if fully alleged herein.

17
18
151.    Plaintiff Sokol, the Connecticut Subclass, and Apple are each "persons" as defined by Conn. Gen. Stat. Ann. § 42-110a(3).

19
20
21
22
23
24
152.    Apple made material misstatements and omissions about the true nature of the iOS 10 and iOS 11 Updates in its advertisements for these updates and for the Affected iPhones.  These deceptive business practices included representing that the Affected iPhones and the iOS 10 and iOS 11 Updates have characteristics, benefits, and qualities that they do not have, and otherwise engaging in conduct likely to deceive.

25
26
27
28
153.    In addition, by failing to disclose and actively concealing that 1) Apple was purposefully slowing down and otherwise diminishing the performance of the Affected iPhones through the iOS 10 and iOS 11 Updates and 2) that these performance problems could be significantly remedied by

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

purchasing a new battery, Apple engaged in deceptive business practices prohibited by the Connecticut Unfair Trade Practices Act ("CUTPA").

154.    Apple knew that 1) it was purposefully slowing down and otherwise diminishing the performance of the Affected iPhones through the iOS 10 and iOS 11 Updates and 2) that these performance problems could be remedied by purchasing a new battery.  But Apple failed to warn Plaintiff Sokol and the Connecticut Subclass of these defects, despite having a duty to do so.

155.    Apple owed Plaintiff Sokol and the Connecticut Subclass a duty to disclose these defects because 1) Apple had exclusive knowledge of the these defects; 2) Apple knew that Plaintiff Sokol and the Connecticut Subclass were not reasonably likely to discover these facts; 3) Apple actively concealed these facts from Plaintiff Sokol and the Connecticut Subclass by making false representations concerning the iOS 10 and iOS 11 Updates and/or 4) Apple's relationship with Plaintiff Sokol and the Connecticut Subclass gave rise to a duty to disclose these facts.

156.    Apple's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Sokol and the Connecticut Subclass, about the true quality and characteristics of the Affected iPhones and the iOS 10 and iOS 11 Updates.

157.    As a result of its violations of the CUTPA detailed above, Apple caused actual damage to Plaintiff Sokol and the Connecticut Subclass and, if not stopped, will continue to harm Plaintiff Sokol and the Connecticut Subclass.

158.    Plaintiff Sokol and the Connecticut Subclass are therefore entitled to damages and other relief as provided under the CUTPA, including restitution and injunctive relief, as described below.

159.    A copy of this Complaint has been sent to the Attorney General and the Commissioner of Consumer Protection of the State of Connecticut in accordance with Conn. Gen. Stat. Ann. § 42-110g(c).

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

## COUNT X

**(Violation of the Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq.*,
on behalf of the Oregon Subclass)**

160.    Plaintiffs incorporate by reference the foregoing paragraphs of the Complaint as if fully alleged herein.

161.    The Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq.*, prohibits unlawful trade practices in the course of business.

162.    The Affected iPhones and the iOS 10 and iOS 11 Updates are "goods or services" under ORS 646.605(6) because they "are or may be obtained primarily for personal, family or household purposes."

163.    At all relevant times, Apple was engaged in the course of its business in marketing and selling the Affected iPhones and the iOS 10 and iOS 11 Updates to and for the public in Oregon, including individuals such as Plaintiff Feldman and the Oregon Subclass.

164.    Apple's conduct, described above, purposefully harming the speed and performance of the Affected iPhones, was unfair and deceptive.

165.    Apple unilaterally took these harmful actions without warning or notice to Plaintiff Feldman and the Oregon Subclass.

166.    Apple made misleading and deceptive representations and advertisements to consumers such as Plaintiff Feldman and the Oregon Subclass concerning the true nature of the iOS 10 and iOS 11 Updates.

167.    Apple also omitted the true nature of its actions when providing the iOS 10 and iOS 11 Updates.

168.    In particular, Apple made affirmative misstatements and omissions concerning the positive effects of the iOS 10 and iOS 11 Updates without disclosing the negative effects of the iOS 10

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

and iOS 11 Updates, including that 1) Apple was purposefully slowing down and otherwise diminishing the performance of the Affected iPhones through the iOS 10 and iOS 11 Updates and 2) that these performance problems could be significantly remedied by purchasing a new battery.

169.    Apple's omissions were material and deceptive.  Reasonable consumers did not expect that the speed and performance of their Affected iPhones would be harmed by the iOS 10 and iOS 11 Updates.

170.    Plaintiff Feldman and the Oregon Subclass reasonably relied to their detriment on Apple's representations and omissions concerning the iOS 10 and iOS 11 Updates.  They would not have installed the iOS 10 and iOS 11 Updates if they knew the information that Apple concealed and/or they would have bought a new battery instead of buying a newer iPhone model after having installed the iOS 10 and iOS 11 Updates.

171.    Apple knew, or in the exercise of reasonable care should have known, that its conduct constituted unlawful trade practices under the Oregon Unlawful Trade Practices Act.  Apple's conduct was therefore willful.

172.    Plaintiff Feldman and the Oregon Subclass suffered damage as a result of Apple's deceptive and unfair conduct. Their phones' processing speed and overall performance have been significantly reduced and they have incurred costs in from purchasing new phones or repairing their Affected iPhones.  Plaintiff Feldman and the Oregon Subclass have been deprived of the benefit of their bargain and are left with substandard iPhones that perform worse than they should.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that the Court enter judgment and orders in their favor and against Apple as follows:

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

A. An order certifying the proposed Nationwide Class, or an alternative class that the Court may find appropriate under Rule 23 of the Federal Rules of Civil Procedure, directing that Plaintiffs' claims proceed on a class-wide basis, and appointing Plaintiffs and their counsel to represent the Cass;

B. An order and/or judgment enjoining Apple from installing a throttling feature that detracts from phone performance into future iOS versions.

C. An order and/or judgment requiring Apple to (a) provide current owners of the Affected iPhones with new batteries for those devices free of charge; (b) directly provide owners of the Affected iPhones with notice of the detrimental effects that are caused by the iOS 10 and iOS 11 Updates and of the fact that those harms can be remedied by replacing the phone's battery; and (c) clearly notify customers when the performance of any Apple iPhone can be restored by the installation of a new battery.

D. An order and/or judgment requiring Apple to pay damages and restitution to Plaintiffs and the other members of the Class in the amount of the injury that they suffered.

E. An order and/or judgment awarding punitive damages or the maximum amount otherwise allowed under the causes of action described above.

F. An order granting reasonable attorneys' fees and costs, as well as pre- and post-judgment interest at the maximum legal rate, as provided for under each of the causes of action described above; and

G. Such other and further relief as this Court may deem appropriate.

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

Dated:  January 9, 2018

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6449
E-mail: jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Michael Grunfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665
Email: jalieberman@pomlaw.com
Email: mgrunfeld@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN**
Peretz Bronstein
Shimon Yiftach (SBN 277387)
1925 Century Park East, Suite 1990
Los Angeles, CA 90067
Telephone: (424) 322-0322
Facsimile (212) 697-7296
Email: peretz@bgandg.com
Email: shimony@bgandg.com

*Attorneys for Plaintiffs and the
Proposed Class*

CLASS ACTION COMPLAINT
Case No: 5:18-cv-00182

34